```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 1:05-CR-00108(2) |
|  | : |  |
| v. | : |  |
|  | : | **OPINION AND ORDER** |
| MICHAEL MYERS | : |  |

This matter is before the Court on Defendant's Motion to Suppress Evidence (doc. 30) and the United States' Response (doc. 35). The Court held an evidentiary hearing on September 29, 2005, at which time the Court granted Defendant's oral Motion to Withdraw his Motion to Suppress Statements (doc. 29).

**I.  BACKGROUND**

This case involves the warrantless arrest of Defendant, on June 3, 2005, as he walked in the area of a gas station near Ohio Route 243 in Lawrence County, Ohio.  Officer John Tordiff, of the Lawrence County Sheriff's Office, stopped and questioned Defendant, and ultimately arrested him.  Defendant argues that the arrest was not supported by probable cause, and therefore requests the court enter an order suppressing all information and evidence obtained as a result of the arrest (doc. 30).

The basic facts of this case, as compiled from the Defendant's Motion, the government's Response, and the testimony of the witnesses at the September 29, 2005 hearing, are as follows.

On June 3, 2005, a single gunman robbed the Oak Hills Bank, in South Point, Ohio. The robber carried money from the bank in a garbage bag, and left the scene in a white truck at about 11:10 A.M. Witnesses saw the suspect park the truck across the street at a Family Dollar Store and flee in a red Camaro. Police pursued the red Camaro, which later they lost sight of near Route 243.

Detective Aaron Bollinger of the Lawrence County Sheriff's Office testified that the County had suffered a rash of bank robberies within the previous two-to-three month period. The robberies consistently involved the use of a stolen vehicle to flee the bank, and then a switch to another vehicle to flee the area. Due to this established modus operandi, and due to the fact that in one of the prior robberies, witnesses observed the robber get into the passenger seat of a fleeing vehicle, Detective Bollinger surmised that two people were orchestrating the robberies. Detective Bollinger indicated that the Sheriff's Office had a number of meetings about these robberies to coordinate an agency response.

Bollinger happened to be in the vicinity of Route 243 when he heard the Dispatcher advising that the red Camaro was in the area. At about 11:24 A.M., Bollinger spotted a red Camaro in the parking lot of a restaurant near County Road 6. Bollinger activated his police lights and ordered the occupant of the vehicle to disembark. Bollinger could not ascertain the gender or race of

2

the occupant of the car, but only saw a subject's head moving around in the front seat of the car.  The car spun sideways, nearly hit Bollinger, and then fled.  Bollinger pursued, but lost the vehicle.  Bollinger testified that some 10-15 minutes later the Dispatcher announced the red Camaro had been found, wrecked and abandoned in a hay field off County Road 52, some 3-4 miles north of the restaurant where he first encountered it.

Lawrence County Sheriff Officer John Tordiff went to the scene of the abandoned Camaro, where he learned that a suspect had fled from the vehicle, which had Kentucky license plates.  Officer Tordiff noted that the field was muddy and wet.  Officer Tordiff left the scene, headed South on County Road 6, turned right on County Road 243, and was heading West when he spotted Defendant. Defendant was heading in the direction of a BP gas station, which was about a third of a mile away.  Tordiff estimated that he spotted Defendant within about 20 minutes after the Camaro crashed. Officer Tordiff noticed that Defendant had mud and grass on his clothing, so he pulled in behind Defendant and approached Defendant.  Defendant did not appear particularly nervous, and offered his name, address, social security number and birthdate. Tordiff learned that Defendant was from Kentucky, that his social security number was correct, but that Defendant's birthdate was incorrect.  Defendant told Tordiff that he was walking to Westwood, Kentucky, some fifteen miles away.

Taking into consideration that Defendant gave an incorrect birthdate, that Defendant was from Kentucky, that he had mud on his clothing, and his proximity to the wrecked Camaro, some three to four miles away, but perhaps closer as the crow flies, Tordiff detained Defendant and took him in for further questioning. Defendant argues that this arrest was not supported by probable cause, that is, based on the totality of the circumstances, Officer Tordiff did not have a sufficient basis to believe that Defendant was involved with the bank robbery.

## II. ANALYSIS

Governmental detentions of persons, including arrests, constitute seizures, and as such must be reasonable under the Fourth Amendment. There are essentially three types of encounters that can occur between a citizen and a police officer: a consensual encounter, an investigative Terry-type stop, and an arrest. See United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989). A consensual encounter can occur without any suspicion or justification, while an arrest can take place only if the police have probable cause to believe the individual has committed or is committing a crime. Beck v. Ohio, 379 U.S. 89 (1964). The investigative stop falls on the continuum between these two, and allows for police to briefly detain a person for investigative purposes even if they lack probable cause to make an arrest. Terry v. Ohio, 392 U.S. 1 (1968).

To make an investigative stop, police must have reasonable suspicion supported by articulable facts that the suspect is committing or has committed a crime. (Id.). If the police also have a reasonable suspicion to believe that the detainee is armed and dangerous, they may also conduct a "frisk," a limited search, to ensure the detainee has no weapons. (Id.), United States v. Cortez, 449 U.S. 411 (1981).

A stop or an arrest constitutes a seizure. A person is seized by a police officer "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). Probable cause to support a valid warrantless arrest exists where the officer, viewing the totality of the circumstances, has facts and circumstances in his knowledge sufficient to warrant a prudent person in believing that the suspect has committed, is committing, or is about to commit an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964), Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

In this case, the Court finds that Officer Tordiff clearly had reasonable suspicion to support a Terry stop of Defendant. Tordiff saw Defendant proceeding on foot in proximity to the escape route of the red Camaro, and saw mud on Defendant's person. These facts justified the stop for further questioning. After Tordiff posed questions to Defendant, he learned that

5

Defendant was from Kentucky, that Defendant gave him an incorrect birth date, and that Defendant said he was walking some fifteen miles to Kentucky.  In the context of this case, where Defendant was only minutes away from the red Camaro, where Defendant was walking along the escape route of the Camaro, where Officer Tordiff knew a suspect was fleeing the scene on foot, and where Tordiff knew the Camaro had Kentucky license plates, a prudent person in Officer Tordiff's shoes would have been warranted in believing that Defendant was linked to the bank robbery.  The Court sees no evidence that would indicate Tordiff acted unreasonably in the totality of the circumstances.  Moreover, the Court finds it reasonable to infer that Officer Tordiff knew about the rash of bank robberies, knew that perhaps two people were involved, and therefore was not unreasonable in suspecting Defendant as a potential accomplice to the driver of the Camaro, who could have either disembarked from the vehicle prior to the accident, or who could have trekked cross country to the place where he encountered Officer Tordiff.

### III. CONCLUSION

The Court finds credible the testimony of Officers John Tordiff and Aaron Bollinger, and finds no abuse of police procedure in the facts presented in this case.  Defendant's stop and arrest was reasonable under the circumstances.  <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964).  Accordingly, the Court DENIES Defendant's Motion to

6

Suppress (doc. 30).

        SO ORDERED.

Dated: October 5, 2005        /s/ S. Arthur Spiegel
                                          S. Arthur Spiegel
                                          United States Senior District Judge